(December 26, 1985)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LEONARD GONZALEZ, Appellant.—Mahoney, P. J. Appeal from a judgment of the County Court of Clinton County (Catena, J.), rendered March 25, 1983, upon a verdict convicting defendant of the crime of murder in the second degree.

Defendant was an inmate at Clinton Correctional Facility when, on May 20, 1980, he allegedly attacked and killed

another inmate. Defendant was indicted and charged with two counts of second degree murder. Defendant moved to preclude identification testimony of four witnesses on the ground that photograph arrays and a lineup used in the investigation were unduly suggestive. After a *Wade* hearing, defendant's motion was denied. Defendant was tried in April of 1982 and, after the jury was unable to reach a verdict, a mistrial was declared. After a second trial, defendant was found guilty of one count of second degree murder. This appeal by defendant ensued.

Initially, we reject defendant's contention that the mistrial was improperly declared such that the second trial was barred by the principle of double jeopardy. The trial court may discharge a deliberating jury without having rendered a verdict only when: "The jury has deliberated for an extensive period of time without agreeing upon a verdict with respect to any of the charges submitted and the court is satisfied that any such agreement is unlikely within a reasonable time" (CPL 310.60 [1] [a]). It has been held that "[t]he decision to declare a mistrial necessarily rests in the broad discretion of the Trial Judge * * * who is best situated to take all the circumstances into account and determine whether a mistrial is in fact required in a particular case" *(Matter of Plummer v Rothwax,* 63 NY2d 243, 250 [citations omitted]). In the instant case, the jury deliberated at least 10 hours. Recently, the Court of Appeals held that a mistrial was properly declared after less deliberation where, as here, the primary issue involved the credibility of witnesses, "a task not necessarily complex but one where 'a jury could shortly become deadlocked' " *(Matter of Owen v Stroebel,* 65 NY2d 658, 661, citing *Matter of Plummer v Rothwax, supra,* p 251). In our view, the situation in the instant case is not unlike that in *Owen* and, therefore, a mistrial was properly declared.

Next, the trial court properly ruled that witnesses to the incident could make in-court identifications of defendant. Photograph arrays were presented to the witnesses and they picked out defendant's picture. Additionally, the witnesses selected defendant out of a court-ordered lineup. Based on the record of the *Wade* hearing, it is clear that the confrontation was not "so unnecessarily suggestive and conducive to irreparable mistaken identification that [defendant] was denied due process of law" *(Stovall v Denno,* 388 US 293, 302). Further, since all of the witnesses knew defendant prior to the incident and had a clear and undisturbed view of the incident, it is

apparent that there existed an independent basis for the in-court identification.

Of more merit is defendant's contention that he was deprived of a fair trial because he was ordered to be kept shackled during the trial in the presence of the jury. Initially, we reject the People's contention that defendant in any way waived this issue. At the *Wade* hearing, defendant expressly requested that the leg irons and handcuffs be removed so that the jury would not see them. Since there is no jury at a *Wade* hearing, it is obvious that defendant was referring to the upcoming trial. Further, defendant again requested, prior to jury selection, that the shackles be removed, albeit on the ground that they were uncomfortable. Defendant then asked if he could be in the courtroom before the jury was brought in so that they might not be aware of the leg irons, thus making clear his position that the shackling would deprive him of a fair trial. Accordingly, this issue was properly preserved for our review.

It has repeatedly been held that a defendant may not be shackled in the presence of the jury unless there is a rational or justifiable basis *(see, People v Mendola,* 2 NY2d 270, 275; *People v Falterman,* 74 AD2d 584; *People v Dell'Orfano,* 72 AD2d 749; *People v McCloud,* 69 AD2d 957; *People v Gonzalez,* 55 AD2d 656). The mere fact that a serious crime is charged or that the defendant is an inmate does not automatically justify shackling the defendant *(see, People v Roman,* 35 NY2d 978; *People v Mendola, supra; People v McCloud, supra).* Here, the trial court simply held that, because of the serious charge and unspecified instances of assaultive behavior in defendant's past, it was deferring to the correction officers' recommendation that defendant be shackled. This is not a sufficient basis on which to shackle defendant. The past assaultive behavior and the concerns of the correction officers were not placed on the record. Further, the cases indicate that the trial court should have exercised its own discretion in this matter and not deferred to the correction officers. Additionally, even if it was appropriate to have defendant shackled, it was prejudicial error for the trial court to have failed to instruct the jury that the shackling was to be disregarded and could not bear on defendant's guilt or innocence *(People v Hart,* 112 AD2d 471; *see, People v Palermo,* 32 NY2d 222, 226; *People v La Boy,* 91 AD2d 1102, 1103). Therefore, defendant was denied a fair trial.

Since there must be a new trial, we deem it provident to pass on an evidentiary issue raised by defendant. It appears

that, prior to the first trial, the People agreed to allow defendant to introduce affidavits of two inmates stating that another inmate, and not defendant, had attacked the victim. However, before trial, these inmates admitted that the affidavits were false and they pleaded guilty to perjury. Regardless of the stipulation, once it became apparent that these affidavits had no probative worth and were, in fact, false evidence, it was proper for the trial court to refuse to allow them into evidence.

Judgment reversed, on the law, and matter remitted to the County Court of Clinton County for a new trial. Mahoney, P. J., Main, Yesawich, Jr., Levine and Harvey, JJ., concur.